UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

        Plaintiff,

                  Criminal Case No.
v.                      2:06-cr-20465-NGE-MKM
                  Hon. Nancy G. Edmunds
Gary Ball, Jr.,              (15-cv-11292-NGE)

        Defendant.

_____

**GARY BALL JR.'S REPLY IN OPPOSITION TO GOVERNMENT'S RESPONSE AND IN FURTHER SUPPORT OF HIS § 2255 MOTION**

    On January 23, 2016, the government filed its Response to Mr. Ball's §2255 Motion. [Doc. 2765] Mr. Ball now files his Reply to that Response.

    In this Reply, Mr. Ball will specifically address certain factual and legal arguments made by the government and will then highlight those portions of his §2255 Motion and supporting Memorandum the government failed to address.

    The primary, if not exclusive agenda reflected in the government's Response is an attempt to convince the Court that there was no conflict of interests attending O'Brien and Shulman's representation of Mr. Ball and that therefore the line of cases which deal specifically with ineffective assistance counsel claims raised in the context of a conflict of interests should not apply.

1

Respectfully, the government is mistaken both with respect to the facts and the law. The government simply has some of the relevant facts wrong,[1] others it has mischaracterized, and still others it has omitted entirely.

But most directly to the point, the "facts" the government offers are absolutely of no moment to the question of whether a conflict of interests existed or to the legal analysis of the consequences of these multiple conflicts. For example, it does not matter if one of Shulman's conflicting representations of McDaniel - a primary source of information against Shulman's other client, Mr. Ball, ended before Mr. Ball's trial started or whether McDaniel was called as a witness at that trial.

Shulman's duty of loyalty to McDaniel and his duty to maintain McDaniel's client confidences and secrets continued for all time and certainly through the time he was retained to defend Mr. Ball in this case. Similarly, while he was serving as Mr. Ball's defense counsel in

---

[1] For example, with respect to Shulman's representation of McDaniel in the Michigan state criminal case which charged facts directly related to facts in the instant case, the government writes in its Response, "First, Mr. Shulman's representation of McDaniel on the state stolen vehicle charges ended prior to the defendant being charged in the superseding indictment in this case and was already serving a state prison sentence at the time of the defendant's trial in 2010." [Doc. 2765 at 13] Putting aside for the moment, the complete irrelevance of the assertion to the proper legal analysis of the issues presented here, this presentation of the "facts" is both mistaken and misleading. The assertion is not accurate. The superseding indictment in the instant case was unsealed and placed on the docket on May 14, 2009 [Doc. 197; 198]. At that time, according to the appellate court docket sheet from McDaniel's related state court case, Mr. Shulman was very much still representing McDaniel in that case, along with his associate Mr. Signorino. Indeed, Mr. Shulman filed McDaniel's Reply Brief in that state court case on September 17, 2009 and the case was not even closed out until January 1, 2011. Mr. Shulman remained counsel for McDaniel throughout the case. [Exh. "1" hereto] The facts concerning Shulman's multiple conflicts arising from his simultaneous (and previous) multiple case representation of McDaniel, a cooperating witness against Mr. Ball and a primary operator in the scheme charged against Mr. Ball, at the same time Shulman was representing Ball are exactly as set out in Mr. Ball's opening Memorandum. [ Doc. 2713 at 26-46]. Of course, the government also seems to overlook the Michigan State Bar's actions concerning Shulman and his misconduct in relation to his duties to Mr. Ball. [Doc. 2722-2 at 22-25].

this case, responsible for zealously representing Mr. Ball's interests to the exclusion of anyone else's interests, Shulman was inescapably and undeniably duty bound to both act in McDaniel's best interests and refrain from doing anything for Ball that could undermine McDaniel's best interests or expose McDaniel has having been untruthful in his cooperation or as having had a more major role than he (McDaniel) had acknowledged to the government or has having attributed a role in the alleged criminal enterprise to Mr. Ball or anyone else that was a role he (McDaniel) actually played. Shulman was required to refrain from pursuing such a critically important line of defense because of his duties to McDaniel and that constitutes reversible error irrespective of whether or not McDaniel testified at trial. *See U.S. v. Levy*, 25 F.3d 146 (2d Cir. 146 (2d Cir. 1994); *U.S. v. Cancilla*, 725 F.2d 867, 871 (2d Cir. 1984); *Church v. Sullivan*, 942 F.2d 1501, 1510-11 (10th Cir. 1991); *Fitzpatrick v. McCormick*, 869 F.2d 1247, 1252 (9th Cir.), *cert. denied*, 493 U.S. 872 (1989). The conflict is inherent in the nature of the conflict and is of te most serious nature. *Id*.

These are serious, overriding, actual conflicts of interests that the just asks the Court to overlook or ignores in its Response. They are at the heart of this Motion. This will all be addressed herein.

In short, there is simply no question as a matter of fact or law that both attorneys were operating under major conflicts of interests while representing Mr. Ball and these conflicts adversely impacted Mr. Ball and nothing in the government's Response in any way challenges that conclusion with relevant facts or legal argument.

Mr. Ball incorporates herein his previous submissions and the entire record in this case. The facts he already has presented to the Court and the support he has provided through his exhibits are unassailable. They reflect major disqualifying conflicts of the most significant

order. Although it should not be necessary, in order to assist the Court, a point by point reply to the government's response follows:

1. At Page 2 of its Response, the government purports to give a chronology relevant to the conflict under which Mr. O'Brien operated, arising from the government's own suspicions, criminal investigation, and ultimately indictment of Mr. O'Brien while he was representing Mr. Ball. That investigation and prosecution, of course, was handled by this same prosecuting authority and involved some of the same individual prosecutors and case agent as are involved in the instant case, all of whom were aware of it and discussed it - and all of whom deliberately concealed it from Mr. Ball, notwithstanding their clearly established duty to disclose it to him. [*See* Doc. 2713 at 20-26, describing the relevant facts].

The government's chronological account is inaccurate and it is inaccurate in a way that is misleading and avoids a specific issue raised in Mr. Ball's Memorandum. The government begins its chronology on March 12, 2008 when the federal complaint was returned charging Mr. O'Brien criminally. However, as Mr. Ball asserted in his Memorandum, supported by documents, Mr. O'Brien was actually suspected by the same case agent as is on Mr. Ball's instant case (Agent Brzezinski) of engaging in serious criminal conduct with the Highwaymen (and Mr. Ball) at least as far back as August 4, 2005. Indeed a specific claim Mr. Ball has made in his motion is that the government withheld from him 302's that would have disclosed to these facts to him and that would have timely revealed Mr. O'Brien's conflict of interests. [*See* Doc. 2713 at 21-22; Doc. 2772-1 at 2; 4-5 - Exhs. 1 & 2 to Memorandum].

The government's Response ignores this constitutionally significant claim and the supporting documents as well as its importance to the chronology and the facts demonstrating the conflict under which O'Brien suffered, as a suspect by this case agent, for engaging in

4

criminal conduct, and specifically in criminal conduct with his client (including, but not limited to, the alleged retagging of vehicles). The Response also ignores the suspicions and steps in the investigation against O'Brien in 2007, [Doc. 2713 at 22; Doc. 2722-1 at 5 and 7-9 - Exhs. 2 & 3 to Memorandum], a time frame when the government acknowledges, as it must, that O'Brien already was representing Mr. Ball in the instant case. [Doc. 2765 at 1] The government impermissibly withheld the 302s and the underlying information demonstrating O'Brien's serious conflict of interests.[2]

2.  The government's chronology provides further that on June 17, 2008, attorney Shulman became counsel of record for Mr. Ball. [Doc. 2765 at 2]. The government fails to acknowledge at this point in its chronology, however, that at the very time Shulman entered his appearance in this case for Mr. Ball, he was concurrently representing McDaniel (and had been representing McDaniel for some time) in a state criminal case in Michigan. [Doc. 2713 at 27; Doc. 2722-1 at 25-31][3]. And of course, while Shulman was representing Mr. Ball in this instant case, he also was concurrently representing McDaniel in another case pending in the Eastern District of Michigan [Doc. 2713 at 27; 2772-1 at 19-23] and, perhaps most shockingly, Shulman was also

---

[2] Mr. Ball files herewith as Exhibit "2" a Declaration from Mr. O'Brien, acknowledging the conflict of interests and its adverse impact on his ability to provide Mr. Ball with the effective assistance of counsel he was constitutionally guaranteed. [See ¶17] The Exhibit also includes a supporting Declaration from Michael Newberry.

[3] *See also* Exhibit "3" hereto. Exhibit "3" is a "Case Investigator's Coordination Meeting" Memo, dated April 9, 2008. It reflects a meeting between lead case agent Brzezinski and others and includes a note in the body of it specifically referring to McDaniel, his relevant criminal activities, the fact that Shulman already was representing McDaniel at that point (with such representation beginning before Shulman started representing Mr. Ball and then running concurrently with it), and it even shows O'Brien as a "subject" of their case and their meeting. There can be no question that the agents and prosecutors in Mr. Ball's case knew that Shulman represented McDaniel before and during his representation of Mr. Ball - in a case in which McDaniel was a primary source of information and cooperating witness against Mr. Ball, through Shulman's advice and assistance.

5

concurrently surreptitiously representing McDaniel in the instant case. And on top of it all, Shulman was representing McDaniel while McDaniel was cooperating with the government against Shulman's other client (Mr. Ball).

Indeed, McDaniel was only dismissed as a Defendant in the instant case based on an agreement that Shulman worked out with the government for McDaniel, that provided for the dismissal of the charges against McDaniel in the instant case (the same case in which Shulman was representing Mr. Ball at the very same time), based on the resolution of the charges against McDaniel, by an agreement again between Shulman (for McDaniel) and the government in 09-20039 - the other case pending in this District at the same time in which Shulman represented McDaniel. [Doc. 2713 at 30, n. 12; Doc. 2722-1 at 19-23]

Furthermore, it is not just the facts and timing of this conflicting concurrent representation that the government omits from its chronology at this point, it is also the indisputable fact that the same prosecutor (AUSA Diana Marion) was involved with both cases and the agreement with Shulman for McDaniel in both cases.[4]

The government clearly knew of the multiple conflicts under which Shulman was operating (and, of course, with all due respect, the Court knew or should have known as well about the conflicts arising from Shulman's concurrent representation of McDaniel and Mr. Ball arising from the two federal cases, given the basis for the dismissal of the charges in the instant case against McDaniel), including not just the clearly conflicting concurrent representations, but even more significantly, McDaniel's role as a source of information for the government against

---

[4] There should not and cannot be any dispute about McDaniel's status as a government cooperator and source of information against Mr. Ball; but Mr. Ball would again bring the Court's attention to yet another case, *U.S. v. $463,497.72 et al.*, 779 F. Supp. 2d 696 (E.D. Mich. 2011, involving yet another of the prosecutors in this instant case (AUSA Ziedas) and reference to McDaniel as a cooperating witness. [*see also* Doc. 2713 at 31, n.13]

Shulman's other client, Mr. Ball. The conflicts were so clear and the same government personnel were involved in the conflicting cases, such that the only reasonable conclusion that can be drawn is that the government's (and Shulman's) concealment of all of this from Mr. Ball was knowingly and intentionally done to sabotage his defense and to cause the adverse impact and prejudice that were in fact caused to Mr. Ball.

In short, throughout its proffered chronology of events, the government's Response fails to acknowledge the indisputable and unquestionably directly relevant facts that (1) at the time O'Brien was representing Mr. Ball in this case, O'Brien was under and had for a long time already been under investigation by the government for several crimes, including crimes alleged to involve his client, involving the same government personnel who were involved in the case against Mr. Ball, with O'Brien then prosecuted by the same and (2) that at the time Shulman began representing Mr. Ball, Shulman had been representing and continued to represent McDaniel (in at least three separate cases), a cooperating witness against Mr. Ball, cooperating through the same government personnel involved with this case, against Mr. Ball. And all of this was concealed at all times from Mr. Ball.

These conflicts and the government's concealment of them are unconscionable and it is both baffling and troubling that the government continues to attempt to defend its outrageous misconduct in this regard or to minimize the nature of the conflicts and the adverse impact they caused for Mr. Ball.

The government's reference to various filings or arguments made or joined by Shulman while operating under the disqualifying conflicts (e.g. 2765 at 3-4) have no bearing whatsoever on the issues before the Court and do not in any way mitigate the conflicts or the adverse impact Mr. Ball suffered. The same is true of the government's description of the trial. At all times,

7

Shulman was operating under multiple conflicts arising from his long-standing and concurrent representation of McDaniel, his continuing duties of loyalty and to preserve his client confidences and secrets, and to do nothing that would be contrary to McDaniel's best interests - which were in direct conflict with Mr. Ball's.[5]

3. The Legal Argument section of the government's Response proceeds from a wholly erroneous premise - that Mr. Ball has somehow concocted an argument based on a conflict of interests type of ineffectiveness claim where none exists and really this case should simply be analyzed under standard *Strickland* analysis. [Doc. 2765 at 5-7, 8, 11]. With all due respect, this might reflect understandable wishful thinking; but the argument bears no relationship to reality. This case presents a case study in conflict of interests jurisprudence - a dream set of facts for a conflicts buff.

Mr. O'Brien at all relevant times operated under a disqualifying conflict arising from his own criminal investigation and subsequent prosecution, made even more damning by the facts that (1) among the criminal conduct he was suspected of was conduct directly related to Mr. Ball

---

[5] Reference to random things Shulman did while representing Mr. Ball and the assertion in the Government's Response that the "testimony and evidence of the defendant's guilt was overwhelming" [Doc. 2675 at 4], are not factually accurate. But more significant here, it is simply not relevant where there are conflicts of interests as presented here. This is axiomatic in conflict of interests jurisprudence for as the courts have repeated over and over again, the danger and "evil" from the conflict(s) is not just in what the attorney did, but "is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." *Holloway v. Arkansas*, 435 U.S. 475, 491 (1978)(Emphasis in original). A record purportedly reflecting "overwhelming" evidence of "guilt" is meaningless in the context of a conflict of interests claim because the government's case has not been adequately tested by the conflicted attorney. In any event, Mr. Ball has more than adequately set out the numerous examples of adverse impact he suffered from the multiple conflicts of interest present here. [Doc. 2713 at 20-46] Indeed, the government's Response ignores almost all of the examples of adverse impact provided. It further ignores the actual removal of Shulman from the case by the Sixth Circuit for failing to meet his obligations and it ignores the admonishment to Shulman issued by the Michigan State Bar expressly because of his conflicts in representing Mr. Ball. [Doc. 2722-2 at 23-25]

and to the Highwaymen and (2) all of the behind the scenes developments concerning the suspicions these same agents and prosecutors had about Mr. O'Brien, and the entire investigation were concealed from Mr. Ball, notwithstanding the prosecutors' affirmative duty to apprise him of the facts and the conflict to which they gave rise.

Mr. Shulman, at all relevant times, operated under disqualifying conflicts of interest arising not just from his prior representation of a person whose interests were directly in conflict with Mr. Ball's and who was, in fact, a cooperating witness against Mr. Ball, but from the concurrent representation of that person, McDaniel, in multiple cases, related cases, and even in the instant case, in which their interests could not have been more in conflict. It defies any sense of credibility to even suggest that this case is not at its heart a conflict of interests variety of ineffectiveness under the unprecedented variety and magnitude of conflicts attending this case.

4. On Page 8 of the Response, the government again reinvents the chronology of relevant events concerning O'Brien's conflict, omitting some of the most relevant facts and their timing. This has already been addressed herein. To the extent the government attempts to argue that O'Brien's involvement in the case was not a "critical stage" and that there is no parallel to the conflict in the *Rugiero* case, for example, [Doc. 2765 at 8], the government is simply wrong as a matter of law and fact. The nature of the conflict attending the lawyer in *Rugiero* was similar, but even less direct than in the instant case. That lawyer was under investigation and ultimately prosecution by the same prosecuting authorities; but the crimes under investigation against the lawyer were not related to Mr. Rugiero, his client.

In the instant case, O'Brien was under investigation for alleged crimes the government claimed were related to his client, Mr. Ball and the Highwaymen, as the relevant exhibits already provided to the Court demonstrate. As in the *Rugiero* case, of course, agents and prosecutors in

9

the investigations and prosecutions of client and attorney overlapped in the instant case. Tellingly, the prosecutors in both *Rugiero* and the instant case work in the same United States Attorney's Office, indicating rather dramatically that the lesson the Court in *Rugiero* intended to convey was not learned.

To suggest that the *Rugiero* case is different because the O'Brien conflict occurred during the pre-trial stage of Mr. Ball's case, rather than at trial, [Doc. 2765 at 8], is to ignore the adverse effects expressly found in *Rugiero*. *See United States v. Rugiero*, 330 F. Supp. 2d 900, 907 (E.D. Mich. 2004)(Gadola, J.)(focusing on lapse in representation at pre-trial stage); *see also United States v. Rugiero*, 2004 U.S. Dist. LEXIS 16574, *64-*69 (E.D. Mich., April 30, 2004)(Pepe, M.J.)(Same); *United States v. Williams*, 372 F.3d 96, 104 (2d Cir. 2004)(emphasizing the impact of a conflict of interests during the critically important pre-trial stage).

What makes this case far worse than the other reported cases on this issue is that the government here concealed O'Brien's conflicts from Mr. Ball during the entire course of his representation, despite knowing full well about them (and their obligation to reveal them to Mr. Ball) and then allowed Shulman to replace O'Brien for trial and all further proceedings in the case, knowing full well the multiple, devastating conflicts of interests that attended his representation of Mr. Ball, but concealing them from Mr. Ball at all times as well.[6]

---

[6] At Page 4 of the Response, the government advises the Court that there came a time when Mr. Ball could not afford Shulman's services and a CJA lawyer was appointed for Mr. Ball. [Doc. 2765 at 4, n.3]. The irony in this is inescapable. Had the government timely revealed O'Brien's conflicts, Mr. Ball could have saved enough money to hire non-conflicted counsel.

In plain, simple, and accurate terms, Mr. O'Brien was under criminal investigation throughout at least 19 months of the time he was representing Mr. Ball, with the same authorities investigating and prosecuting both client and attorney, while concealing it from the client.

Those same authorities then let Shulman enter the case for Mr. Ball, knowing full well that at that very time and on a continuing basis, Shulman was simultaneously representing McDaniel against the related and other criminal charges he faced and was actually participating in debriefings with the authorities and McDaniel - a cooperator against Mr. Ball and others - while representing Mr. Ball, for a period of some 23 months. The government certainly gained the tactical advantage it sought by concealing the conflicts from Mr. Ball. It must not be permitted to continue to profit from this gross misconduct.

No one could credibly suggest that such a scenario does not fit within the conflict of interest variety of ineffectiveness cases. The government is wrong as a matter of both law and fact.

Most of the remaining section on Mr. O'Brien requires no response and is addressed in detail in Mr. Ball's original Memorandum.

However, it must be pointed out that the government's representation that "[O]f the seventeen individuals charged in the original indictment, none of them resolved their cases between October 2006 and May 2008" [Doc. 2765 at 10], is disingenuous. While Mr. Ball cannot yet know the truth as to all of what was going on behind the scenes, he does know at least that Defendants Zuk and Nasser Nagi were cooperating during that period - See Exhibit "4" hereto - and their formal dismissals were simply delayed until later in the case. *See e.g.* DE 521. It is disingenuous to suggest that while Mr. O'Brien was in the case the government was not working out cases with other defendants. Clearly, the government was making deals with others

in or related to this case during the time period the government would like the Court to overlook. (*See also* Exhibit "4" re: defendants Peters and Burton and witness David Casey).

5. The government's rendition of the chronology of events regarding Shulman's participation in the case and his conflicts is, as already discussed, misleading and mistaken. [Doc. 2765 at 11-16] As noted earlier herein, the assertion that Shulman's representation of McDaniel on the state stolen vehicle charges ended prior to Mr. Ball being charged in the superseding indictment in this case is not only legally irrelevant, it is factually untrue.[7] [Doc. 2765 at 13]

The government's attempts to minimize McDaniel's role in the crimes charged and his relationship to the crimes charged in this case only serves to highlight the conflicts Shulman had from his representation of McDaniel, especially insofar as it attempts to deal with the stolen and re-tagged motorcycles scheme. [Doc. 2765 at 13-15].

The government's attempts to minimize McDaniel's role in the stolen motorcycle, re-tagging scheme in the instant case to try to minimize the related example of adverse effect from Shulman's conflict.  The government asserts that it was never the government's contention that "these motorcycles were stolen at the direction of McDaniel or that he played a major role in the conspiracy." [Doc. 2765 at 13].  This representation is diametrically at odds with documents obtained from McDaniel's state court case in which Shulman also represented him and from what the grand jury in the instant case was told about McDaniel's leading role in the scheme.  In the state court case, McDaniel was referred to as "the king of VIN alteration for (the Highwaymen)" [Exhibit "3" hereto at 1-2]

Additionally, when AUSA Graveline presented the instant case to the grand jury, McDaniel was a primary guy in the stolen motorcycle, re-tagging, title scheme. [Exhibit "5"

---

[7] *See* footnote 1 herein.

hereto] Of course by the time of trial, with McDaniel now a cooperating witness in the case, government witness Wisner made no mention of McDaniel ("the King of VIN alteration") in relation to the stolen motorcycle, retagging, stolen title scheme and Shulman laid down on the issue and Shulman did not confront Wisner, witness Ricky Frank, or Burton about McDaniel's role.

In short, in the state case Great Lakes Choppers, the alleged Highwaymen stolen motorcycle and re-tagging scheme, was all about McDaniel.[8] In the instant case, with Shulman representing Mr. Ball while operating under the conflict of having represented McDaniel in the scheme and concurrently representing McDaniel, with the corresponding duties he owed to McDaniel, McDaniel's role in the scheme was falsely attributed to Mr. Ball. Shulman did nothing to confront witnesses on this and otherwise did nothing and was constrained by his duties to McDaniel from doing anything that would point the finger at McDaniel, expose the irreconcilable theories, and otherwise effectively represent Mr. Ball, with the conflict-free defense to which he was constitutionally entitled.

The conflict produced a double whammy of adverse impact. Shulman's conflicts led to a completely false presentation of the facts and who was actively operating the scheme and Mr. Ball faced more severe consequences at sentencing since what Shulman refrained from doing based on his conflict led falsely to the conclusion that Mr. Ball had a primary role. [*See* Doc. 2713 at 28, 32-41 for a more full explanation of this issue].

---

[8] *See People of the State of Michigan v. McDaniel*, 2010 Mich. App. LEXIS 1858 (Mich. App., September 30, 2010)(describing McDaniel's stolen motorcycle, re-tagging scheme and Great Lakes Choppers and noting that McDaniel was charged and convicted of "conducting a criminal enterprise" in which the predicate acts were all related to the stolen motorcycle, re-tagging, chop shop scheme.) *Id.* at n.1.

Had Shulman filed the sentencing related motion the Court asked for and Mr. Ball asked Shulman to file regarding loss amount, but for Shulman's conflict, the motion and a hearing on the same would have focused on the false attribution by AUSA Marion of Great Lakes Choppers motorcycles that were recovered to Mr. Ball when, (as Shulman by then well knew), the true facts were they were wholly attributable to McDaniel and not to Mr. Ball. Shulman failed to file the motion and, of course, his conflicts and continuing duties to McDaniel would not have permitted him to advocate the true facts. Doing so also would have increased the likelihood of exposing to Mr. Ball the conflicts under which he was operating.

Shulman's acts and omissions in this regard and throughout the trial were not a function of "trial strategy." [Doc. 2765 at 15] Rather they were a function of Shulman's conflicts. Moreover, the legal standard put forward by the government, *e.g.* Doc. 2765 at 16, simply is the wrong standard and ignores the proper standard that applies to conflict of interests type ineffectiveness claims.

6. The government's attempt to simply lump all of Mr. Ball's additional specific claims about government misconduct and more is unavailing. [Doc. 2765 at 15-16] The claims do indeed have merit, and were not raised "numerous times over at Rule 29 and direct appeal." Moreover, they are claims which properly are raised in the context of a §2255 motion as they need record development not possible up to this point. Several of them will be addressed in a motion for discovery to be separately filed and that will make specific, targeted requests to permit discovery, with support and an explanation for each request.

One claim Mr. Ball has made, pertaining to police officer Benito Mendoza, which the government attempts to dismiss as an "*ad hominem* attack without support in evidence or truth" [Doc. 2765 at 15-16], is nothing of the kind and is supported by abundant evidence. Much more

14

evidence on this subject will be available through discovery. For now, Mr. Ball asks the Court to consider his own Declaration and supporting sub-exhibits, all attached hereto as composite Exhibit "6" on this subject in reply to the government's assertion that there is no evidence to support Mr. Ball's claims about Mendoza. Mr. Ball requests the opportunity to more fully develop this claim after having the benefit of targeted discovery that he will seek in a separately filed discovery motion.

7. The government failed entirely to respond to many material assertions in Mr. Ball's Motion and supporting Memorandum, especially many of the specific examples of adverse impact he has cited in connection with the conflicts claims. The following are but a few specific examples of assertions in Mr. Ball's Memorandum to which the government failed to respond:

A. The government withheld 302s from Mr. Ball during the entire time of O'Brien's representation in this case, going back at least to August 4, 2005, which alleged, *inter alia*, that Mr. Ball was supplying O'Brien with cocaine. [Doc. 2713 at 22]

B. The government withheld the fact that Mr. Ball's co-defendant, Aref Nagi is/was a state and federal informant, allowing, among other harm, a "spy in the camp" situation. [Doc. 2713 at 47]

C. The government never disclosed Shulman's multiple representations of McDaniel, notwithstanding its clear duty to do so. [Doc. 2713 at 46]

D. The government never disclosed that McDaniel was debriefed as a cooperator in the *$463,497.72* case by AUSA Ziedas, one of prosecutors in the instant case or that agents and prosecutors involved in the instant case also were involved with the other cases against McDaniel, worked with McDaniel as a cooperating witness, and knew that Shulman represented McDaniel in all three of the cases identified herein, represented him as a cooperator, and

represented Mr. Ball in the instant case and concealed all of the same in order to conceal the conflict of interests arising from these facts.

At Pages 40-46 of his Memorandum, Mr. Ball sets out numerous examples of ways in which Shulman was constitutionally ineffective in representing Mr. Ball and ways in which Mr. Ball suffered adverse impact from Shulman's multiple conflicts of interests. Almost each one of these specific examples goes completely unaddressed in the government's Response. [Doc. 2713 at 40-46]

Similarly, at Pages 46-50 of his Mr. Memorandum, Mr. Ball cites and explains numerous examples of prosecutorial misconduct in this case. Again, virtually each one remains without any answer at all in the government's Response. [Doc. 2713 at 46-50]

## **AN EVIDENTIARY HEARING IS REQUIRED IN THIS CASE**

This wholesale failure by the government to address these serious, supported claims that rise to a constitutional level is just one more reason why a full evidentiary hearing must be granted in this case. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)

Determining whether an actual conflict and adverse effect exists requires a factually intensive inquiry that turns on 'the particular[s] of the case at hand.' *Rugiero*, *Id.* at *60, *citing Perillo v. Johnson*, 205 F. 3d 775, 782 (5th Cir. 2000); *Maiden v. Bunnell*, 35 F. 3d 477, 481 (9th Cir. 1994).

Courts assiduously have held that on claims of ineffective assistance of counsel it is critically important for the trial court to develop a full record through an evidentiary hearing. *See e.g.*, *Raysor v. United States*, 647 F.3d 491 (2d Cir. 2011)(granting COA for failure to grant evidentiary hearing and ultimately remanding for evidentiary hearing on ineffectiveness claim); *Goldberg v. Tracy*, 366 Fed. Appx. 198 (2d Cir. 2010)(granting COA on claim of ineffective

appellate counsel); *Smith v. Wainwright*, 737 F.2d 1036, 1037 (11th Cir. 1984)(certificate granted for failure to grant evidentiary hearing).

A defendant seeking a hearing on an ineffectiveness claim "need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim." *Raysor*, 647 F.3d at 494, *quoting from Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009).

Mr. Ball has done far more than establish a "plausible" claim of ineffectiveness with respect to his conflict claims and his ineffectiveness claims not directly related to the conflicts. Moreover, this is not a case, like *Chang v. United States*, 250 F.3d 79, 89 (2d Cir. 2001) or *Wang v. United States*, 459 Fed. Appx. 44 (2d Cir. 2012), in which the government produced lengthy detailed sworn statements from former counsel, etc. Indeed, Mr. O'Brien has candidly acknowledged his conflict and his inability because of it to effectively represent Mr. Ball in this case. [Exh. "2" at ¶17] The Michigan State Bar has admonished Shulman for his multiple conflicts and, tellingly, he refused to respond to or cooperate with the Bar's inquiry into the same. [Doc. 2722-2 at 23-25]

Denying an evidentiary hearing would never be appropriate in this case, in any event, given the nature and variety of the claims, the detailed submission with respect to the evidence and testimony at issue for the ineffectiveness claims (and the government misconduct claims) and because of the conflict of interests claim and the various examples of adverse impact provided, including adverse impact on plea negotiation advice and other matters which require live record development.

## **CONCLUSION**

For all of the reasons set forth in his original Memorandum and herein, Mr. Ball is entitled to the relief he seeks in his §2255 motion. As noted previously, the conflicts of interest attending this case, known, of course, by the lawyers who labored under them, and known as well by government counsel, were singularly outrageous, and without any question constituted actual conflicts of interests which adversely affected Mr. Ball and his defense in this case and which beyond any question require that his judgment of conviction and sentence be vacated immediately, as a matter of fact and law. The other constitutional errors cited in the original Memorandum and herein demand vacating the judgment of conviction and sentence as well.

Mr. Ball already has uncovered and has produced a lot of documentary support for his assertions; but we believe he has only scratched the surface so far in uncovering all that was concealed from him regarding the conflicts of interests and the other constitutional issues he has raised. His informal efforts at obtaining information and materials relevant to these claims continues; however, he will require the use of formal discovery tools to help uncover all of the true facts relevant to these important issues. To that end he will be filing a formal discovery motion, targeted to specific issues he will describe and he will submit support for that motion to demonstrate to the Court the efforts he has undertaken already and the bases for believing that the discovery he seeks will be directly relevant to the issues and is essential to put before the Court.

Mr. Ball respectfully reserves the right to amend and supplement his claims and proof as this case proceeds.

He respectfully requests a full evidentiary hearing and, ultimately, respectfully submits that his judgment of conviction and sentence are due to be vacated as a matter of fact and law.

        Respectfully Submitted,

_____
/s/ David I. Schoen

David I. Schoen
Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Phone: 334-395-6611
Fax: 917-591-7586
E-Mail: DSchoen593@aol.com;
Schoenlawfirm@gmail.com

CERTIFICATE OF SERVICE

    I hereby certify that on this 21st day of July, 2016, I have caused a copy of the foregoing Reply and Exhibits to be served on all counsel of record by filing the same through the ECF system.

_____
/s/ David I. Schoen