# EXHIBIT 1

# Case Search

*Case Docket Number Search Results - 290689*

## Appellate Docket Sheet
**COA Case Number: 290689**

PEOPLE OF MI V RANDALL LEE MCDANIEL

| 1 | PEOPLE OF MI | PL-AE | AG | (26291) **MOLNER WILLIAM E** |
|---|---|---|---|---|
| | Oral Argument: Y Timely: Y | | | 525 W OTTAWA STREET |
| | | | | PO BOX 30217 |
| | | | | LANSING MI 48909 |
| | | | | (517) 373-4875 |
| 2 | MCDANIEL RANDALL LEE | DF-AT | RET | (60527) **SIGNORINO JOHN III** |
| | Oral Argument: Y Timely: Y | | | 2000 TOWN CENTER |
| | | | | SUITE 1650 |
| | | | | SOUTHFIELD MI 48075 |
| | | | | (248) 936-1900 |

**COA Status:** Case Concluded; File Archived

03/02/2009    1 Claim of Appeal - Criminal
> Proof of Service Date: 02/27/2009
> Check #: 7472
> Fee: $375.00
> Receipt #: 2906891
> Receipt Mailed: 03/24/2009
> Jurisdictional Checklist: Y
> Register of Actions: Y
> Attorney: 45075 - SHULMAN LAWRENCE B

10/15/2008    2 Order Appealed From
> From: MONROE CIRCUIT COURT
> Case Number: 07-036304-FH
> Trial Court Judge: 23716 LABEAU MICHAEL W
> Nature of Case:
>   Criminal Miscellaneous 2 Counts
>   Habitual Offender 1st

03/02/2009    7 Steno Certificate - Tr Request Received
> Date: 11/17/2008
> Timely: Y
> Reporter: 5434 - O'DELL CAROL A
> For Event #: 1
> Hearings:
>   07/07/2008
>   07/08/2008
>   07/09/2008
>   07/10/2008
>   10/13/2008

03/09/2009    8 Notice of Filing Transcript

Date: 02/17/2009
Timely: Y
Reporter: 5434 - O'DELL CAROL A
For Event #: 7
Hearings:
   07/07/2008
   07/08/2008
   07/09/2008
   07/10/2008
   10/13/2008

| | |
|---|---|
| 03/17/2009 | **9 Steno Certificate - Tr Request Received** |

Date: 03/12/2009
Timely: Y
Reporter: 5434 - O'DELL CAROL A
For Event #: 1
Hearings:
   01/23/2009

| | |
|---|---|
| 03/18/2009 | **10 LCt Document** |

Date: 03/17/2009
For Party: 2 MCDANIEL RANDALL LEE DF-AT
Attorney: 45075 - SHULMAN LAWRENCE B
Comments: cc of ret of acts as req by asst clk in re evt 3

| | |
|---|---|
| 03/23/2009 | **11 Notice of Filing Transcript** |

Date: 03/19/2009
Timely: Y
Reporter: 5434 - O'DELL CAROL A
For Event #: 9
Hearings:
   01/23/2009

| | |
|---|---|
| 03/30/2009 | **12 Appearance - Appellee** |

Date: 03/26/2009
For Party: 1 PEOPLE OF MI PL-AE
Attorney: 60211 - MCGORMLEY JOEL D

| | |
|---|---|
| 05/04/2009 | **13 Stips: Extend Time - AT Brief** |

Extend Until: 06/11/2009
Filed By Attorney: 45075 - SHULMAN LAWRENCE B
For Party: 2 MCDANIEL RANDALL LEE DF-AT
P/S Date: 05/01/2009

| | |
|---|---|
| 06/11/2009 | **14 Telephone Contact** |

For Party: 2 MCDANIEL RANDALL LEE DF-AT
Attorney: 45075 - SHULMAN LAWRENCE B
Comments: Aty John Signorino's assistant advises that pleading titled as application not new filing but a brf.

| | |
|---|---|
| 06/11/2009 | **15 Brief: Appellant** |

Proof of Service Date: 06/11/2009
Oral Argument Requested: Y
Timely Filed: Y
Filed By Attorney: 60527 - SIGNORINO JOHN III
For Party: 2 MCDANIEL RANDALL LEE DF-AT

| | |
|---|---|
| 06/17/2009 | **16 Other** |

Date: 06/16/2009
For Party: 2 MCDANIEL RANDALL LEE DF-AT
Attorney: 60527 - SIGNORINO JOHN III
Comments: Cover Sheet for AT brf which indicates pleading fl'd 6/11/09 is AT bf on appeal

06/25/2009  17 Telephone Contact
Comments: Spk to Ms. Coffman for aty Signorino: AT cvr shts were serv'd on 6/16/09; p/s forthcoming

06/26/2009  18 Proof of Service - Generic
Date: 06/16/2009
For Party: 2 MCDANIEL RANDALL LEE DF-AT
Attorney: 60527 - SIGNORINO JOHN III
Comments: of amended cvr shts for AT brf

07/17/2009  19 Noticed
Record: REQST
Mail Date: 07/20/2009

07/22/2009  20 Record Filed
Comments: files(2);trs(5)

07/27/2009  22 Stips: Extend Time - AE Brief
Extend Until: 08/13/2009
Filed By Attorney: 26291 - MOLNER WILLIAM E
For Party: 1 PEOPLE OF MI PL-AE

08/11/2009  23 Other
For Party: 2 MCDANIEL RANDALL LEE DF-AT
Attorney: 60527 - SIGNORINO JOHN III
Comments: Returned postcard not at this address re event 19-Resent to correct address

08/12/2009  24 Telephone Contact
For Party: 2 MCDANIEL RANDALL LEE DF-AT
Attorney: 60527 - SIGNORINO JOHN III
Comments: Confirmed in rcpt of AE brf

08/12/2009  25 Brief: Appellee
Proof of Service Date: 08/12/2009
Oral Argument Requested: Y
Timely Filed: Y
Filed By Attorney: 26291 - MOLNER WILLIAM E
For Party: 1 PEOPLE OF MI PL-AE

09/02/2009  26 Motion: Extend Time - Reply Brief
Proof of Service Date: 09/02/2009
Check #: 3543
Fee: $100.00
Receipt #: 2906892
Filed By Attorney: 45075 - SHULMAN LAWRENCE B
For Party: 2 MCDANIEL RANDALL LEE DF-AT
Requested Extension: 09/16/2009
Answer Due: 09/09/2009

09/09/2009  27 Defective Filing Letter
Event: 26
Defect:
  PROOF OF SERVICE - Cured

09/09/2009  28 Telephone Contact
Comments: Christy frm aty Molner's office confirmed that ATmt ext tm fl reply brf wasn't recv'd

09/14/2009  29 Defect Cured
Event: 26
P/S Date: 09/02/2009
Defect:
  PROOF OF SERVICE - Cured

09/14/2009  30 Proof of Service - Generic

Date: 09/02/2009
For Party: 2 MCDANIEL RANDALL LEE DF-AT
Attorney: 45075 - SHULMAN LAWRENCE B
Comments: Of motion to extend time fl reply brf (evt 26)

09/17/2009   33 Brief: Reply
             Proof of Service Date: 09/17/2009
             Filed By Attorney: 45075 - SHULMAN LAWRENCE B
             For Party: 2 MCDANIEL RANDALL LEE DF-AT
             Comments: Accepted per 9/24/09 order

09/22/2009   31 Submitted On Administrative Motion Docket
             Event: 26 Extend Time - Reply Brief
             District: D
             Item #: 3

09/24/2009   32 Order: Extend Time - Reply Brief - Grant
             View document in PDF format
             Event: 26 Extend Time - Reply Brief
             Panel: BKZ
             Attorney: 45075 - SHULMAN LAWRENCE B
             Comments: The reply brf received on 9/17/09 is accepted for filing

07/07/2010   42 Submitted on Case Call
             District: D
             Item #: 4
             Panel: PDO,PMM,DSO

09/30/2010   50 Opinion - Per Curiam - Unpublished
             View document in PDF format
             Pages: 10
             Panel: PDO,PMM,DSO
             Result: L/Ct Judgment/Order Affirmed

01/11/2011   51 Remittitur & Record Returned - Close Out
             File Location: F
             Comments: 2 lcf;5 tr--monroe circ

Case Listing Complete

## Jackson Lewis Acquires Detroit's Rubin Shulman



Employment law firm Jackson Lewis has acquired Detroit, Michigan's Rubin Shulman, bringing on the firm's five attorneys. Allan S. Rubin joins Jackson Lewis as a partner; he is a nationally recognized trial and appellate attorney. He graduated *cum laude* from the Thomas M. Cooley Law School.

**This article explains what's really going on at Thomas Cooley Law School**: Thomas Cooley Law School Exposed (and Why Much of the Legal Profession is a Scam)

Lawrence B. Shulman joins as of counsel; he handles complex civil and criminal litigation. He previously headed the Criminal Defense, Forfeiture & Licensing practice group at Fried Saperstein Abbatt. They bring along Christina A. Daskas, Neil B. Pioch and John C. Signorino, who join as associates. The Rubin Shulman team brings Jackson Lewis's Detroit headcount to 10 attorneys.

In March, Jackson Lewis merged with Omaha, Nebraska's Berens & Tate. Founded in 1958, Jackson Lewis exclusively represents management in workplace law, with 565 attorneys practicing in 41 cities nationwide.

# EXHIBIT 2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

|  |  |
|---|---|
| UNITED STATES | ) |
| v. | ) |
| D-17 GARY BALL, JR. | ) |

Case No. 06-cr-20465
Honorable: Nancy G. Edmunds

DECLARATION

Lee O'Brien

## DECLARATION OF LEE O'BRIEN

I, lee O'Brien, hereby declare the following to be true under penalty of perjury, under the laws of the United States of America:

1.  l, am an adult and am providing this declaration voluntarily, and without any promise, reward, payment, or any other benefit.

2.  At all times relevant to the events described herein, while representing Ball, I was a licensed attorney admitted to practice law in the State of Michigan and before the United States District Court for the Eastern District of Michigan.

3.  I am providing this Declaration at the request of attorney David Schoen, after truthfully telling Schoen the facts set forth herein. I understand that this Declaration might be submitted to a Court on behalf of Gary Ball, Jr., and I authorize the same. This Declaration is limited to the subjects on which Schoen asked me to provide it.

4.  On or about October 3, 2006, I formally entered my appearance in the United States District Court for the Eastern District of Michigan, to represent Gary Ball, Jr., a Defendant in Case No. 06-cr-20465. In the indictment in the case, my recollection is that Mr. Ball was charged with Possession of Controlled Substances and Conspiracy to possess and distribute controlled substances, including, marijuana, cocaine, and ecstasy under 21 U.S.C. §§ 841 & 846.

5.  During the initial stages of my representation of Gary ball, Jr., I advised him that he was being charged with offenses involving marijuana, cocaine, and ecstasy conjunctively and that he was the last defendant charged (D-17), and it was my understanding that he was alleged in the indictment to be a "runner" for the main defendant in the case.

6.  While I was Mr. Ball's attorney in the case, it was my opinion that I could fully and successfully defend Mr. Ball from the charges against him and we discussed the possibility of filing a motion to dismiss the indictment against him.

7.  Immediately upon entering the case, I spoke with other defense counsel and they shared with me the small amount of discovery they had received. I attempted to contact AUSA Diane Marion directly to obtain additional discovery to which I believed Mr. Ball was entitled; but my efforts were to no avail. I called her office repeatedly to ask for the discovery, but was put off each time, until finally I was told not to call again and that Ms. Marion would get me the discovery whenever she would get to it.

8.  I believed that, notwithstanding what I thought would be our ability to defend against the charges, the best resolution for the case, like most cases, would be a resolution through a plea, entered early on in the case. I believed that based on a number of factors, including were I understood Mr. Ball to fall in the hierarchy, according to the governments allegations, the fact that we were early on in the case, and the absence of any quantity enhancements or other apparent offense characteritics

-1-

that would have increased the sentence, that a resolution by plea would be the best way to go and that a sentence in the 5 year range would be realistic and so I advised Mr. Ball.

9. I specifically recall a time while I was representing Mr. Ball, when Agent Brzezinski approached me and told me that the government would be willing to make a deal for Mr. Ball, with a sentence in the 5 year range, if Mr. Ball would be willing to become an informant and cooperate with the government against others. I understand his insistence that Mr. Ball cooperate against others to be an absolute condition and he wanted me to bring Mr. Ball in to meet with the government.

10. On or about November of 2007, while I was representing Mr. Ball in the case in federal court, I represented Michael Newberry, a defendant in a state court criminal case in Dearborn Heights, in Wayne County, Michigan. I learned that a Michigan State Police Detective named Mike Roehring was handing the case against Mr. Newberry.

11. On or around November of 2007, during a pretrial hearing in the Newberry Case, while I was standing with Mr. Newberry, Detective Roehring and Agent Brzezinski motioned to me to come over to them.

12. I went over to Roering and Brzezinski and Agent Brzezinski told me that he wanted my Client Mr. Newberry to become an informant, and cooperate against Mr. Ball. (It was alleged that the stolen/retagged vehicle recovered from Mr. Newberry was provided by Mr. Ball).

13. Mr. Newberry indicated to me that he was not interested in what Brzezinski had proposed and I walked back over to Brzezinski and told him this, Brzezinski became irate, then accused me of selling a stolen 1969 Chevrolet Camaro. From that point forward it was clear to me that Brzezinski had it in for me and this was reflected in all my communication with him.

14. Sometime thereafter, I received a call from Brzezinski advising me that he had a warrant for my arrest on a claim that I had made a False Statement to a Federal Officer. I told Brzezinski that there was absolutely no truth to such an allegation and I hung up and called an attorney to represent me against this false claim.

15. I was aware that both Brzezinski and Roehring were very angry with me for not bringing in my clients Mr. Ball and Mr. Newberry to cooperate with the government, as Brzezinski had demanded, and I believe that Brzezinski called me about the phony claim that I was involved with a stolen car because of his anger and in an effort to intimidate me and scare me into getting my clients to cooperate.

16. I say without hesitation that I was not able to enter into any meaningful plea negotiations on behalf of Gary Ball, Jr. while I was his attorney in the federal case based on Agent Brzezinski's anger toward me for not bringing in Mr. Ball to cooperate (and for

-2-

latter in Ball's investigation not bringing in Newberry to cooperate) and based on my concerns arising from Brzezinski's threats against me personally, and finally from his call advising me he had a warrant against me.

17. I also do not believe that, because of all the attending circumstances during the time I represented Mr. Ball in the federal court case, I could or did effectively investigate and prepare the case for his defense or otherwise effective represent Mr. Ball in the case.

18. When my representation of Mr. Ball in the federal case came to an end, I asked Lawrence B. Shulman, an attorney I knew, if he would visit Mr. Ball in the federal detention center in Milan, Michigan, where Mr. Ball was being held, for the purpose of taking on Mr. Ball's representation in the federal court case in which I had been representing him.

19. I am aware that there were numerous reports of investigation that the government had in Mr. Ball's case that purported to implicate me in a number of crimes. Indeed, I am aware that the government had investigative reports which expressly accused me of being involved in criminal activity with my client Gary Ball, Jr., and that such alleged crimes including a claim that I used cocaine with Mr. Ball.

20. It is my understanding that Agent Brzezinski is the author of some or all of the government's investigative reports accusing me of serious criminal conduct, including serious criminal conduct directly with me client, Gary Ball, Jr. and it is my understanding as well that many or all of the accusations that I engaged in criminal activity with Mr. Ball pre-dated the accusations Brzezinski brought against me concerning the allegedly stolen car matter, referred to earlier herein, at that such accusations appeared in these investigative reports during the time I was representing Gary Ball, Jr. in the federal court case. 06-cr-20465.

21. I have no doubt whatsoever that Brzezinski's issues with me and the governments view of me more generally during the time I represented Gary Ball, Jr. adversely affected and, indeed, prejudiced Mr. Ball's opportunity and ability meaningfully to attempt to obtain a resolution of his case through a plea negotiation. I also believe that I was rendered unable to meaningfully investigate and prepare Mr. Ball's case for a proper defense while I remained in the case as his attorney, based on all of the forgoing.

22. After Mr. Ball was convicted, I contacted attorney Dennis Belli, Mr. Ball's appellate attorney and offered to travel to his office for the purpose of preparing a declaration laying out all of the above and additional relevant information regarding Mr. Ball's defense; but mr. Belli never responded to my efforts to contact him.

   I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

-3-

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,　　　)
　　　　Plaintiff,　　　　　　　)　　　Case No.: 06-cr-20465-NGE
　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　　**D E C L A R A T I O N**
D-17 GARY BALL Jr.,　　　　　　)
　　　　Defendant　　　　　　　 )
_____)

I, Michael Newberry, declare as follows:

1.　　In November 2007, I was in the Dearborn Heights Court with my attorney Lee O'Brien
　　　when Special Agent FBI Ted Brzezinski called my attorney, Lee O'Brien over to him.
　　　Brzezinski told me to stay where I was. I could hear Brzezinski ask my attorney
　　　to ask me if I would give information on Gary Ball Jr. to help me on my case.
　　　When attorney O'Brien asked me, I told him I didn't know anything bad about
　　　Gary Ball Jr.. Then when attorney O'Brien told Agent Brzezinski what I said,
　　　Brzezinski and O'Brien began arguing, and I heard FBI Agent Brzezinski telling
　　　O'Brien that he (Brzezinski) was going to indict attorney O'Brien on a stolen
　　　car charge. Attorney O'Brien then came back over to me and said that Brzezinski
　　　must be smoking crack, because O'Brien didn't know anything about a stolen car.

2.　　If I was called to testify I would testify competently to the above information.

I DECLARE THE FOREGOING IS TRUE UNDER PENALTY OF PERJURY.

Sworn this 18 day of Feb 2014

STATE OF MI　　　)
(COUNTY OF OAKLAND)

SUBSCRIBED + SWORN BEFORE ME BY MICHAEL
NEWBERRY ON FEBRUARY 18, 2014, KNOWN TO ME
TO BE THE DESCRIBED PERSON.

　　　　　　　　　　　　　　Michael Newberry

　　　　　　　　　　　　　　SAMUEL N BARNETH,
　　　　　　　　　　　　　　OAKLAND COUNTY MI, NOTARY
　　　　　　　　　　　　　　COMM. EXPIRES 8/23/17  PUBLIC

**Michigan Department of State Police**
**ORIGINAL INCIDENT**
**REPORT**

| ORIGINAL DATE | INCIDENT NO. |
|---|---|
| Fri, Oct 26, 2007 | DRT-0000290-07 |
| TIME RECEIVED | FILE CLASS |
| 1339 | 24002 |

thankful for the notification of the recovery. Mr. Worley indicated that there was no insurance on the vehicle at the time it was taken. Mr. Worley stated that he will make arrangements to pickup the vehicle.

### INTERVIEW TODD SULLIVAN:

On 11-01-07 undersigned officer along with FBI Agent Ted Brzezinski had a interview with Todd Sullivan and his attorney at his business. Todd Sullivan stated that he has done other work for Lee O'Brian in the past and one day Lee O'Brian stated to Todd Sullivan that he has a 69 Camaro that he got from a client and asked if he would be interested in buying the vehicle. Todd stated that he would like to look at it. The vehicle was at Ramsey's Auto yard on Mellon St. in Detroit. Todd Sullivan went there and looked at the vehicle and agreed to buy it. A few days later the vehicle was dropped off at his shop by Leonard Moore along with the title. Todd Sullivan had the vehicle titled in his name and a few weeks later presented a check to Lee O'Brian for the 1969 Camaro. Todd Sullivan provided officers with a copy of the returned check # 1409 that was written to Lee O'Brian in the amount of 10,000 dollars. Remarks section of the check indicate 1969 Camaro check was dated 03/30/2005. Officers asked if when he purchased the vehicle for 10, 000 was he in any way paying off the legal fees of another person and Todd stated that no he was purchasing a 1969 Camaro.

### INSURANCE COMPANY NOTIFICATION:

Undersigned officer cancelled all vehicles from LEIN, and notified each insurance company of the condition and location of their vehicles.

### TITLE HISTORY (FORD EXPLORER)

Undersigned officer received a copy of the title history on this vehicle that was observed in the rear of 1111 Watermen St. Detroit. VIN: 1FMZU73E02ZB70736   Title history shows the following transactions.
- 10-18-07 titled issued to Nicole Lynn Clinton
- 10-04-07 Nicole Purchased vehicle from Ramsey's Auto Recycling Inc. 14301 Mellon St. Detroit, MI. in the amount of 2,822.00.
- 10-02-07 Ramsey's Auto Recycling purchased the vehicle from Elite Motors Inc. unknown amount.
- 07-25-06 Elite Motors purchases the vehicle from a TR-52 abandon vehicle notice from Detroit Police in the amount of 443.00

### SUSPECT:
NAM: SEAN PATRICK DONOVAN
RAC:

| | | |
|---|---|---|
| NBR: | DIR: | ETH: |
| STR: | | SEX: |
| SFX: | | DOB: |
| CTY: | ST: | HGT: |
| TXH: | ZIP: | WGT: |
| TXW: | | HAI: |
| | | EYE: |

| |
|---|
| OPS: |
| SSN: |
| SID: |
| FBI: |
| MNU: |
| PRN: |

### INTERVIEW SUSPECT DONOVAN:

Undersigned officer attempted to ask DONOVAN some questions about this case and he declined and requested an attorney. No further questions were asked.

| PAGE | INVESTIGATED BY | REPORTED BY | REVIEWED BY |
|---|---|---|---|
| 6 of 14 | | | |

EXHIBIT 3

211

## C06 053 00001 CASE INVESTIGATOR'S COORDINATION MEETING  040908

### *CONFIDENTIAL*

040908   On Wednesday, April 9, 2008, a meeting of involved investigators in this case was conducted at MSP DRATT offices. Present were:
FBI Detroit S/A Ted Brzezinski
MSP D/Lt. Ray Collins
MSP D/Sgt's. Avery, Terry, Hart, and Brown
MSP DRATT Det's. Roehrig and Davis
SS/A Wisner

Absent were:
Brownstown Twp. P.D. Det. McCarthy –
Detroit Police D/Sgt. Benny Mendoza

Det/Sgt. Jeff Hart provided an update on the prosecution of Highwaymen Randell McDaniel, whose jury trial scheduled for 040708 was adjourned until 070708. There exist some issues with the MI AG assigned to the case, Oronde Patterson, that need to be addressed. Also, some issues with the judge assigned, and the new defense attorney, a Lawrence Schulman, about permitting expert testimony from CT SPOL D/Sgt. Bob Kenney. Monroe Circuit Judge LeBeau does not seem "on-board" to hear this case. That said, FBI S/A Brzezinski assured the group that McDaniel will be indicted to face federal criminal charges no matter what happens in Monroe County Circuit Court.

Det. Roehrig's Beamon lead on Jackson Street in Taylor, MI, was discussed. This is a lead on an enclosed Haulmark utility trailer that was observed at the address, and Det. Roehrig needs to interview subject Beamon about stolen vehicles seized from Beamon's brother's house in Taylor recently anyway. Det. Roehrig also mentioned that he and S/A Brzezinski still intend to interview John Consiglio of Macomb, MI, on the likely owner give up he did on a late model Chevrolet Corvette.

S/A Brzezinski advised the group he is returning to grand jury in the next month or so, for another round of federal indictments, mostly for narcotics trafficking for Highwaymen subjects of this investigation. He'll indict the drug enterprises first, with many people still facing indictment. This should be "round two" that should send a clear message to the Highwaymen populace that this investigation is active and ongoing.

Per Det. Roehrig, subject Jack Allen Ray is running back and forth between MI and KY. He was believed at one time to be stealing heavy V-twin cycles for Bobby Burton. Det. Roehrig is looking to arrest him.

S/A Brzezinski advised that intel indicates Highwaymen Joe Mathis, AKA Yank, is possibly taking over as national president to replace Joe Whiting of Detroit, MI. Hells Angels are friendly to the Highwaymen. Highwaymen's Florida chapter in puking out, their Kentucky chapter has reportedly just taken on 25 new members, their TN chapter is flourishing, and there is talk of them establishing an Arizona chapter of the Highwaymen with permission and blessing from the H.A. there. Per S/A Brzezinski, the Detroit area Highwaymen are now sending their stolen cycles to Kentucky to get them re-numbered

211

(note: further evidence, if true, that subject Randy McDaniel was the king of VIN alterations for this club in Michigan).

Discussion then focused on the Great Lakes Choppers aspect of this investigation. How to snatch up all the heavy V-twins presumably disguised by GLC's FMVSS labels and titles. Det. Roehrig has some 27 packages assembled, with most of the cycles in the tri-county area, but one near Grand Rapids, one up north in Alcona County, two near Flint, and one in WV. I advised that our WV S/A Adkins knew the WV owner, and is awaiting our nod to inspect the cycle. I also advised that if additional manpower is needed, NICB could assist. The group discussed who to do first and how, or whether it should all be done at once in a "sweep". Also, manpower necessities, and whether search warrants should be obtained for every location.

A concensus was reached by the group that a sweep should be conducted, hitting all locations at the same date with search warrants for the suspect cycles and any other stolen motorcycles and/or parts found at those locations. This would include subject David Michael Foster of Hazel Park, MI, as well, as he was the owner of Great Lakes Choppers and still has some 10-15 Great Lakes Choppers titled to him. It was decided that Thursday, May 29th, will be the target date to accomplish this sweep.

The meeting concluded at 115 PM.

In follow up to this meeting, by agreement with FBI S/A Brzezinski, I am to author and send him an e-mail outlining information I need by which to enter prosecution information on subjects:

-Kukla
-Abraham
-Ramsey
-Hutchison
-O'Brien
-Juan Flores  (altered serial number on a firearm)
-William Bridges  (Macomb County COMET)
-David Casey
-Jack Allen Ray  (Roehrig's prosecution?)

S/A Brzezinski requested that I also e-mail to him my prosecution excel spread sheet, and I will do so.

NICB SS/A Wisner  041008  NICB case C0605300001 meeting minutes of 040908

*CONFIDENTIAL*

0165

# EXHIBIT 4

- 1 -

# FEDERAL BUREAU OF INVESTIGATION

Date of transcription    01/18/2007

On January 16, 2007, Monika Izabela Greene also known as (aka) Zuk, and her attorneys Harold Fried and Steven Vitale came to the Detroit FBI office. Greene and her attorneys were advised of the identity of the interviewing agents and the nature of the interview. Greene was interviewed pursuant to a proffer agreement with the United States Attorneys Office. Greene provided the following information:

Greene was shown the Michigan Department of Motor Vehicle (MDMV) photograph of Steve Nagi (Arabic male, date of birth ████████, MDL#: ████████ aka Aref). Greene identified the person in the photograph as the person she knew as Steve. Nagi is a member of the Highwaymen Outlaw Motorcycle Gang (HOMG).

In January/February of 2006, after going out to the bars, Greene and Mike Jurzik (Greene's cousin, contact number of 313/333-0806) went to the HOMG club house located on Michigan Avenue in Detroit, Michigan. While at the clubhouse, Greene and Nagi got into a fight. As Greene and Jurzik were leaving, Nagi and five other HOMG members (unable to recall identities) were beating up an unknown individual (Unknown #1) outside the club house. Nagi then put a gun to the head of Unknown #1. Seeing this, Greene yelled for Nagi to stop because she was afraid Nagi was going to kill Unknown #1. As Greene and Jurzik attempted to leave, four HOMG members blocked the front and back of the car. Nagi then put the gun to Greene's head and another HOMG member put a gun to Jurzik's head. Nagi told Greene not to tell him what to do.

On New Years day of 2003, Nagi put a gun to Greene's head because Greene had dance with some else on New Years Eve. In January of 2006, Green "broke up" with Nagi.

Greene was shown the MDMV photograph of Michael Joseph Kukla (White male, date of birth ████████, MDL#: ████████ aka Chopper). Greene identified Kukla as the person she knew as "Chopper". Kukla lived in Lansing, Michigan and was a member of the HOMG. Kukla dates a black female (name unknown) who is a dancer in Lansing, Michigan.

Approximately one year ago, Nagi and Greene where at Greene's house in Westland, Michigan when Kukla called Nagi. Kukla

---

Investigation on    1/16/07    at   Detroit, Michigan

File #   281D-DE-97602-1022

by   SAs Edward Brzezinski and Richard Wozniak:raw    Date dictated   N/A

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    01/23/2007

On January 22, 2007, Monika Izabella Greene also known as (aka) Monika Zuk (date of birth ███████) came to the Detroit FBI office. On January 16, 2007, Greene was interviewed by the interviewing agents, in the presence of her attorneys, pursuant to a proffer agreement with the United States Attorneys Office (see Greene's FD-302 dated 1/16/07). This interview is a continuation of that agreement. Greene provided the following information:

Mark Last Name Unknown (LNU) was the Highwaymen Outlaw Motorcycle Gang (HOMG) member that put a gun to the head of her cousin, Mike Jurzik at the Detroit clubhouse in January/February 2006. Mark LNU was described as a white male, 6'02", 36 years old and medium build. Steve Nagi told Greene that Mark LNU was the "Hitman" for the HOMG. Greene understood Nagi to mean that Mark LNU killed people for the HOMG.

After Greene and Nagi broke up (January of 2006), Nagi called Greene on approximately ten times. Each time Nagi told Greene if any thing happened to Greene or Greene's family it was out of his hands and the HOMG think that Greene knows too much. Greene understood Nagi to mean the HOMG wanted to hurt her and/or her family because she knew about the HOMG's involvement in stolen motorcycles.

On May 24, 2006, Greene began dating Joseph Greene (Greene's husband). From June to August of 2006, Nagi wanted Greene and her husband to pay him and the HOMG $50,000.00 as "restitution" for Nagi "letting go" of Greene. On one occasion, Joseph Greene went to Nagi's residence located on Boldt Street in Dearborn, Michigan and met Nagi and two other presidents (identities' unknown) from the HOMG. Nagi and the two presidents told Joseph Greene they wanted $50,000.00 from Greene and Joseph Greene. Nagi never threatened Greene or Joseph Greene if they did not pay the $50,000.00. Greene never paid the $50,000.00 to Nagi. Joseph Greene first met Nagi in June of 2006. Joseph Greene owns a "heating and cooling" business.

In mid April of 2006, Nagi told Greene that two of his house in Sterling Heights, Michigan and Dearborn, Michigan had been raided. After Nagi was arrested in April of 2006, Nagi asked

---

Investigation on   1/22/07    at   Detroit, Michigan

File #   281D-DE-97602-█████

by   SAs Edward Brzezinski and Richard Wozniak:raw     Date dictated   N/A

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev 10-6-95)

281D-DE-97602

Continuation of FD-302 of ___ Monika Izabella Greene _____ , On 1/22/07 _____ , Page ___ 2 ___

Greene if the FBI had ever came and talked to her. Greene told Nagi that she had never talked to the FBI.
Nagi told Greene the following: The FBI thinks he is switching VIN numbers of cars. If he (Nagi) resold the stolen "bikes" he could make a lot of money.

Greene recalled a truck with an enclosed trailer coming to her house. Greene was unable to recall who drove the truck and if the trailer contained anything.

Greene identified the following individuals via a photograph:

a. Johnny Dean Jarrell (white male, DOB: ████████ is a person whom Greene knows as JD. JD is a member of the HOMG.

b. Leonard Moore (white male, DOB: ████████ is a person whom Greene knows as Bo. Bo is a member of the HOMG.

c. Nasser Nagi (Arabic male, DOB: ████████ is Nagi's son.

d. Gary David Ball Jr. (white male, DOB: ████████ is a person whom Greene knows as Jr. Nagi told Greene the following: When Nagi was "pulled over" (arrested) for the marijuana, Nagi was driving Jr.'s Cadillac. Jr.'s house was raided on the same day Nagi was arrested. Nagi gave his Range Rover to Jr. until the police released Jr.'s Cadillac.

e. Misale Gonzalez (Hispanic male, DOB: ████████ is a person whom Greene knows as Meecho. Meecho is a member of the HOMG. Meecho played pool and worked out with Nagi.

f. Erick Scott Manners (White male, DOB: ████████. Greene was unable to recall Manners' name but identified Manners as a member of the HOMG.

████████ e. Michael Francis Ciccehetti (Hispanic male, DOB: ████████ is a person whom Greene know as Coco. Coco is a member of the HOMG.

g. Greene was unable to recall any illegal activity committed by the above individuals.

Case 2:06-cr-20465-NGE-MKM ECF No. 2795-1 filed 07/21/16 PageID.20309 Page 22
2:06-cr-20465-NGE-MKM Doc # 1892 filed 04/07/11 Pg 1 of 34 Pg ID 9303
of 33

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

                                        Hon. Nancy G. Edmunds
   v.                                CRIMINAL ACTION
                                          NO. 06-20465
AREF NAGI, ET AL,

                Defendants.
_____/

EMERGENCY MANDATORY PRETRIAL CONFERENCE
BEFORE THE HONORABLE JUDGE NANCY G. EDMUNDS
United States District Judge
DECEMBER 9, 2009

APPEARANCES:

For the Government:     Ms. Diane Marion, Esq.
                         Assistant United States Attorney

For the Defendants:     Mr. James Thomas, Esq.
                         In behalf of D-1 Nagi

                         Mr. David Lee, Esq.
                         In behalf of D-2 N. Sanchez

                         Mr. Mark Kriger, Esq.
                         In behalf of D-3 Gebara

                         Mr. Andrew Densemo, Esq.
                         In behalf of D-4 Manners

                         Mr. Sanford Plotkin, Esq.
                         In behalf of D-5 Cicchetti

             (Appearances continued next page)

&mdash;   &mdash;   &mdash;

*Suzanne Jacques, Official Federal Court Reporter*
*email: jacques@transcriptorders.com*

Case 2:06-cr-20465-NGE-MKM   ECF No. 2795-1   filed 07/21/16   PageID.20310   Page 23
2:06-cr-20465-NGE-MKM   Doc # 1892 filed 04/07/11   Pg 10 of 34   Pg ID 9312   10
12/9/2009 Emergency Mandatory Pretrial Conference

1    35, Glenn Ballestero, and appearing on behalf of Mr. Jarrell,

2    who is present in the courtroom, as is Mr. Ballestero.

3                 MS. MARION:   Defendant 17, Gary Ball Junior.

4                 DEFENDANT GARY BALL JR.:   I spoke with my attorney

5    yesterday.   He said he will be here.

6                 THE COURT:   Who is your attorney?

7                 DEFENDANT GARY BALL JR.:   Shulman, Larry Shulman.

8                 THE COURT:   Thank you, Mr. Ball.

9                 MS. MARION:   Defendant 18, Leonard Dad Moore.

10               MR. BRUSSTAR:   John Brusstar appearing on behalf of

11   Leonard Moore.   He is present.

12               MS. MARION:   Defendant 19, Gerald Peters.   He's

13   been excused, Your Honor.

14               Defendant 20, Joseph Whiting, is in custody.

15               MR. SCHARG:   Morning, Your Honor, Henry Scharg on

16   behalf of Joseph Whiting.   He is in custody and his presence is

17   waived.

18               MS. MARION:   Robert Burton has also been excused.

19               Do we have anybody standing in for Steve Scharg?

20               MR. SCHARG:   I'll stand in for Steve Scharg.

21               MS. MARION:   Defendant 22, Ronald Hatmaker.

22               MS. MACERONI:   Patricia Maceroni standing in for

23   Jeffrey Cojocar, the attorney of record, and Mr. Hatmaker is

24   here.

25               MS. MARION:   Defendant 23, Mike Kukla.

                       Case No. 06-CR-20465

12/9/2009 Emergency Mandatory Pretrial Conference

1           THE COURT: Who is your attorney?

2           DEFENDANT SOSNOVSKE: Cecil St. Pierre.

3           THE COURT: Thank you, Mr. Sosnovske.

4           MS. MARION: Defendant 77, John Thomas.

5           DEFENDANT JOHN THOMAS: My attorney is not here

6 yet.

7           THE CLERK: They may not be e-filers. They

8 probably didn't get the notice.

9           MS. MARION: Defendant 78, Randall Hutchinson.

10          MS. STOUT: Kimberly Stout standing in for Richard

11 Convertino on behalf of Mr. Hutchinson, who is present.

12          MS. MARION: And I think that's the roll call, Your

13 Honor.

14          THE COURT: Okay. Thank you.

15          Ms. Marion contacted the Court late Monday evening

16 with a matter of great urgency, and I'll let her explain it to

17 you.

18          MS. MARION: Thank you, Your Honor. With the

19 Court's permission, may I address, without turning my back on

20 you?

21          THE COURT: That's fine.

22          MS. MARION: I said several times, and I've tried

23 to stress this several times, that we have informants that

24 provide us information about the activities of your club. Not

25 all those informants will be testifying at trial, which means

Case No. 06-CR-20465

Case 2:06-cr-20465-NGE-MKM  ECF No. 2795-1  filed 07/21/16  PageID.20312  Page 25
2:06-cr-20465-NGE-MKM  Doc # 1892 of 33  04/07/11  Pg 20 of 34  Pg ID 9322  20
12/9/2009 Emergency Mandatory Pretrial Conference

1    not all those informants will be disclosed to any of you.  Some

2    will be.

3            About a month ago, I sent a law enforcement

4    activity log to everybody to keep them up to speed and give

5    them a summary of some of the discovery.  I inadvertently

6    attached a partial witness list to the end of that.  As

7    evidence of the fact that nobody reads anything that gets sent

8    to them, very few of you that I contacted even realized that

9    there was a witness list at the end of that document.

10           However, recently, the Highwaymen themselves

11   discovered the witness list.  We received information that

12   there was a mandatory meeting tonight at the Highwaymen

13   clubhouse for all members to attend to discuss what to do about

14   the government witnesses.  I will let you know right now that

15   Gerald Peters and Bobby Burton have been moved.  Their

16   whereabouts will not be disclosed, and they will be kept out of

17   state until the conclusion of this trial.  Both of them are

18   cooperating.

19           I will also advise all of you, and I want you to

20   pay very careful attention to this, if anything, anything

21   happens to any witness in this case, you will not -- I don't

22   think you will ever see a more aggressive investigation and

23   prosecution than we would conduct.  That is the one thing I

24   will not tolerate.

25           The government has bent over backwards to provide

                       Case No. 06-CR-20465

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

Plaintiff,

v

DAVID JAMES CASEY,

Defendant.

No. 07-CR-20631

Hon Denise Page Hood

**MOTION TO MODIFY CONDITIONS
OF SUPERVISED RELEASE**

**BRIEF IN SUPPORT**

---

# MOTION TO MODIFY CONDITIONS OF SUPERVISED RELEASE

NOW COMES COUNSEL FOR DEFENDANT David James Casey, and requests that Defendant's
supervised release be modified for the following reasons;

1.    On September 18, 2008, this court sentenced Defendant to 35 months
imprisonment, to be followed by one year of supervised release. At the time, Defendant had
been in pretrial custody since March 27, 2007.

2. Defendant has been on supervised release since October 2009. He had been in full
compliance with all terms of his supervised release until early this year, and was working at a
pawn shop on Eight Mile Road.

3. Early this year the prosecution released additional discovery materials in a 91-
defendant R.I.C.O. conspiracy case involving the Highwaymen Motorcycle Club, case #06-20465,
before Judge Edmunds of this district. Contained within those materials were reports of
debriefings of Defendant, a former club member, who had cooperated with the government as
part of his agreement in this case.

4. When those materials were released, the F.B.I. and A.T.F. gave Defendant significant
sums of money, and agents told him he needed to relocate for his own safety, as members of

the Highwaymen were known to be dangerous and to have threatened members who had cooperated with authorities.

5. Defendant did in fact relocate outside of Michigan, and maintained contact with his probation officer in this district. However, the probation department in his new location was unable or unwilling to accept him for supervision.

6. The probation department in the Eastern District of Michigan has been understanding with the unusual situation facing Defendant. However, the department has told him that, without an order from this court, he will be treated as out of compliance unless he returns to Michigan.

7. Defendant requests that, for his safety, this court allow him to reside out of state while being supervised at a distance by the probation department in this judicial district for the remainder of his period of supervised release, unless the court sees fit to terminate his period of supervised release at this time.

8. Defendant is indigent and was represented in this case by the undersigned counsel. He requests that counsel be appointed for him for purposes of this motion and any further proceedings related to this matter.

## BRIEF IN SUPPORT

This court has the authority to modify conditions of supervised release under 18 U.S.C. Sec 3583(e)(2).

Respectfully submitted,

/s/ Jeffrey Butler
JEFFREY BUTLER P25348
540 Longpointe
Lake Orion MI 48362
(248) 770-3847
jeffb507@aol.com

March 11, 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
                    Plaintiff,

v.

DAVID JAMES CASEY,
                    Defendant.

_____/

CRIM. NO. 07-20631
HON. DENISE PAGE HOOD

## GOVERNMENT'S RESPONSE AND BRIEF IN SUPPORT TO MOTION TO MODIFY CONDITIONS OF SUPERVISED RELEASE

The government concurs with the motion to modify conditions of supervised release for

Defendant David James Casey.

Respectfully submitted,

BARBARA L. MCQUADE
United States Attorney

/s/ Diane L. Marion
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9703
E-mail: Diane.Marion@usdoj.gov
P33403

Dated: March 19, 2010

EXHIBIT 5

8

1   experience and investigation, E is ecstasy.

2 Q. When you said smoke, that's what?

3 A. Marijuana.

4 Q. All right. Have our informants confirmed Brian Jarrell does

5   deal in marijuana and ecstasy?

6 A. Yes. Several of them. And cocaine at this point, that he's

7   still actively dealing cocaine.

8     MR. GRAVELINE: Just so we don't get too

9 far ahead of ourselves, does anybody have any questions on

10 Sean Donovan, Brian Jarrell, Eugene Trumph, as far as

11 Count 1 and RICO?

12

13     (No questions were posed by the Grand

14     Jury.)

15     MR. GRAVELINE: No? All right.

16     Now, Count 2, they have also been added

17 to the RICO conspiracy as well for the same reasons that

18 Diane would have mentioned earlier, that basically we have

19 the substantive RICO count and RICO conspiracy, and they are

20 all working together. And there is an agreement to

21 facilitate their criminal enterprise.

22     We dismissed Count 3, Count 4 and

23 Count 10.

24     The next count that has any changes to

25 it is Count 15, which is on page 26. And this is the quote

unquote substantive count for the Myrtle Beach where they

9

```
 1        went down to Myrtle Beach to steal motorcycles.  And what we
 2        have done here is removed Defendant 20, Joseph Whiting, from
 3        the count, and added two other defendants, 81,
 4        Randy McDaniel, and 82, David Foster.
 5   BY MR. GRAVELINE:
 6   Q.   Agent Brzezinski, what information do we have connecting
 7        Randy McDaniel to these stolen motorcycles?
 8   A.   Randy McDaniel is Highwayman down in the Monroe area.
 9        Randy McDaniel and David -- has a relationship with
10        David Foster.
11                  To kind of back it up, Steve Mullins,
12        he's a member of the Outlaws Motorcycle Gang.  Steve Mullins
13        cooperated with the government on a case when ATF was
14        looking into the Outlaws.  Diane Marion happened to be the
15        assistant US attorney on that case, also.
16                  We spoke to Steve Mullins, and it's kind
17        of complicated, but David Foster owns a company, or owned a
18        company, called Great Lakes Choppers, which he had
19        manufactured titles for motorcycles.  That meant that he had
20        the authority by the state to build motorcycles, title them,
21        which makes it street legal.  Through Steve Mullins, Foster
22        was providing Randy McDaniel these titles.
23                  Randy McDaniel sold a couple of these
24        titles directly to Aref Nagi to be able to register one of
25        the bikes that we have seized.  Actually, we -- the one we
```

008415

```
 1          seized at Eugene Trumph's shop was already titled in
 2          Great Lakes Chopper, but we were still able to identify it
 3          as stolen.
 4    Q.    Just so we back up.  Randy McDaniel has the authority from
 5          the state to title motorcycles?
 6    A.    David Foster has the authority, and David Foster was
 7          providing the titles to the Highwaymen through
 8          Randy McDaniel, and Randy was giving those titles or selling
 9          them to the Highwaymen.
10    Q.    And so the reason the Highwaymen wanted them is that could
11          make a stolen bike look like it has a clean title through
12          the State of Michigan?
13    A.    Correct.  It makes it completely legit.  If you get rid of
14          the old title, you put a stamp on it, the manufacturer's
15          title showing that it's a built bike, basically, that the
16          company built the bike.  And now if you got clean titles, if
17          you are on the street, unless it gets to an investigation
18          like this where you actually take it off the street, examine
19          it and go through every component of the bike, you are not
20          going to be able to tell it's stolen.  Sometimes even when
21          you do that, you can't.
22    Q.    Going to our informant, Steve Mullins, Randy McDaniel and
23          David Foster knew what was going on with these titles they
24          were providing the Highwaymen?
25    A.    Absolutely.  We have multiple informants saying the
```

11

1    Highwaymen would just show up to a shop, and he would slap a

2    manufacturer vehicle identification number on it and just

3    hand him a title, and they would drive off on a stolen

4    bike.

5  Q.   When you say he, who is that?

6  A.   Dennis Vanhulle, for one.

7  Q.   I mean --

8  A.   David Foster.

9  Q.   They would show up at his shop, and he would do that for

10   them?

11 A.   Correct.

12 Q.   That's how it applies to the bikes stolen out of

13   Myrtle Beach?

14 A.   Correct.

15          MR. GRAVELINE:   Anyone have any

16   questions on Count 15 on the addition of David Foster and

17   Randy McDaniel?

18          Diane also wanted me to point out, we

19   also changed the fact Myrtle Beach is in South Carolina, not

20   North Carolina, like we had it the last time.   We apologize

21   for that.

22          Count 17, this is the drug conspiracy,

23   once again, led by Robert Burton, Bobby Burton.   And we have

24   added Sean Donovan; Defendant 80, Edward Gabbard; and

25   Defendant 83, John McGinn.