UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GARY BALL, JR., D-17,

    Defendant.

Case No. 06-cr-20465

Honorable Nancy G. Edmunds

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SENTENCE MODIFICATION [3035]**

Defendant Gary Ball, Jr. is 55 years old and currently in the custody of the Federal Bureau of Prisons ("BOP") at the Federal Correctional Institution Elkton in Lisbon, Ohio. The matter is before the Court on Defendant's motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF No. 3035.) The government filed a response in opposition to Defendant's motion. (ECF Nos. 3046) Defendant filed a reply and two supplemental briefs. (ECF No. 3063, 3073, 3086.) The Court has reviewed the record in its entirety and finds that a hearing is not necessary. For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion.

**I.    Background**

Defendant was the Eight Mile Chapter Vice President of the Detroit Highwaymen Motorcycle Club ("HMC"), a multi-state outlaw motorcycle gang with its national headquarters in Detroit, Michigan. In its prime, HMC included approximately ten chapters, each with its own officers and internal leadership structure that operated within the hierarchy of the organization as a whole. *United States v. Nagi*, 541 F. App'x 556, 563

(6th Cir. 2013), cert. granted, judgment vacated, 572 U.S. 1111 (2014). On December 15, 2009, Defendant was indicted along with 90 other members of HMC. (*See* ECF No. 997.) The defendants were each charged with one or more crimes including violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), RICO conspiracy, conspiracy to transport stolen property, conspiracy to distribute drugs, and conspiracy to murder, among other things. Some defendants went to trial and some pleaded guilty. Sentences for those that were found guilty ranged from probation, on the low end, to decades in prison for those highest on the culpability list.

On April 1, 2010, trial commenced against Defendant. After weeks of testimony, the jury found Defendant guilty on six counts: a substantive RICO violation, RICO conspiracy, conspiracy to transport stolen property in interstate commerce, conspiracy to alter vehicle identification numbers, and two counts of conspiracy to possess and distribute drugs. With a guideline range of 360 months to life, this Court sentenced Defendant to 360 months imprisonment (30 years). More than a decade later, Defendant remains incarcerated and has a little over thirteen years of his sentence left to serve. His projected release date is November 29, 2034.

Six other leaders of HMC were also tried alongside Defendant. Relevant here are defendants Leonard "Dad" Moore and Aref Nagi. Moore was the "godfather" of HMC, and he occupied the top leadership position of the organization. As the Sixth Circuit recognized, there was ample evidence at trial which demonstrated that Moore was "likely the most powerful member of the organization" and that "all significant club activities had to go through him." *Nagi*, 541 F. App'x at 573-74. Despite this evidence, the jury acquitted Moore on the substantive RICO charge and found him guilty on a single count of RICO

conspiracy. At sentencing, this Court considered the multitude of evidence presented at trial and held Moore responsible for many of the acts underlying the conspiracy. He was sentenced to life imprisonment consistent with the guidelines calculation at the time. But Moore appealed to the Sixth Circuit which found that because the jury did not find Moore guilty on the substantive RICO charge, or make any special findings as to Moore's participation in the acts underlying the conspiracy, the guidelines only allowed for a maximum term of 20 years. See *id.* at 576 ("The statutory maximum for a violation for the RICO statute is twenty years, unless the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment. . . . [w]hile Racketeering Acts 1, 2, 4, 6, 9, 11, and 13 are all violations for which the maximum penalty includes life, the jury never made any special findings as to Moore's participation with these acts"). Moore was therefore re-sentenced to 20 years imprisonment after the case was remanded to this Court.

A third co-defendant in this trial group, Aref Nagi, was also found guilty by the jury. Like Defendant, Nagi was convicted of a substantive RICO violation, RICO conspiracy, conspiracy to transport stolen property in interstate commerce, conspiracy to alter vehicle identification numbers, and conspiracy to possess and distribute drugs (one drug charge). Nagi was also found guilty of two additional charges beyond those on which Defendant was convicted—assault with a dangerous weapon in aid of racketeering and using a firearm during and in relation to a crime of violence. This Court sentenced Nagi to a total term of imprisonment of 37 years including a mandatory 10-year consecutive sentence on the firearm conviction. That firearm conviction, however, benefitted Nagi in that he was able to appeal the conviction all the way to the Supreme Court. On May 19, 2014, the

Supreme Court vacated Nagi's judgment in light of the recently decided *Rosemond v. United States*, 572 U.S. 65 (2014).[1] *See Aref Nagi v. United States*, 572 U.S. 1111 (2014). Even though *Rosemond* only applied to Nagi's firearm conviction, the case was remanded to this Court under a general remand which allowed the Court to re-sentence Nagi on all the counts upon which he was convicted. (*See* ECF 2766.) The Court took into consideration updated information regarding Nagi's exemplary conduct in prison and re-sentenced Nagi to a cumulative 20-year term of imprisonment, shaving 17 years off his prior sentence.

Then came COVID-19, the once-in-a-lifetime pandemic that caused countless numbers of people to become sick and caused millions of deaths. *See World Health Organization*, WHO Coronavirus (COVID-19) Dashboard, https://covid19.who.int (last visited 6/8/2021) (identifying, to date, 173,331,478 confirmed cases of COVID-19 and 3,735,571 deaths). As a result of the pandemic and the recently amended 18 U.S.C. § 3582(c)(1)(A),[2] motions from incarcerated individuals requesting "compassionate release" started pouring into federal courts. One of those motions was Moore's. He requested compassionate release on July 22, 2020 due to his advanced age (73 years), medical conditions, and an increased risk of severe infection from COVID-19. This Court found the reasons Moore provided were "extraordinary and compelling" as required by the statute and reduced his sentence to time served. (*See* ECF 3032.) He was released from prison on November 5, 2020 after having served approximately ten years.

---

[1] In *Rosemond v. United States*, the Supreme Court held the government must prove "advance knowledge that a confederate would use or carry a gun" and that jury instructions must include that the "defendant knew in advance that one of his cohorts would be armed" in order to prove a violation of 18 U.S.C. § 924(c), use of a firearm during and in relation to a crime of violence. 572 U.S. 65 (2014).
[2] As discussed in more detail below, Section 603(b) of the First Step Act amended 18 U.S.C. § 3582(c)(1)(A) to allow incarcerated persons to file motions for compassionate release on their own behalf.

Like Moore, Defendant here seeks relief under 18 U.S.C. § 3582(c)(1)(A). As the basis for his motion, Defendant complains of hypertension, obesity, pre-diabetes, bronchitis, latent tuberculosis, spinal disc protrusions, and bilateral inguinal hernias combined with an increased risk of infection and severe illness from COVID-19 while he remains incarcerated at FCI Elkton. Defendant was previously diagnosed with a COVID-19 infection in the first few months of the pandemic and alleges he was given sub-standard medical care. He states he struggled to breathe and suffered from other severe symptoms but was not tested, isolated, or given any treatment for weeks after first reporting his symptoms to the BOP. Though he has recovered, he continues to have long-term effects of the disease and fears re-infection despite having received two doses of a COVID-19 vaccine. He asks the Court to reduce his term of imprisonment to time-served, as it did with Moore.

Alternatively, Defendant asks the Court to reduce his sentence and remedy the disparity between Nagi's amended 20-year sentence and Defendant's significantly longer 30-year sentence. Defendant argues that he never had the opportunity to be re-sentenced as Nagi did and that his 10-year longer term for fewer convictions presents extraordinary and compelling circumstances to reduce his sentence.

## II.    Analysis

Under 18 U.S.C. § 3582(c)(1)(A), district courts may modify a term of imprisonment for "extraordinary and compelling reasons." *See United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020). While frequently thought of as requiring immediate release, the statute allows a district court to "reduce but not eliminate a defendant's prison sentence[.]" *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020); *see also*, *United States v.*

*McDonel*, --- F. Supp. 3d ----, No. 37-20189, 2021 WL 120935, at *6 (E.D. Mich. Jan. 13, 2021) (reducing 1,285-month sentence to 240 months). Nevertheless, such motions are generally referred to as those for "compassionate release." *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *8 n.2 (D. Utah Feb. 18, 2020) ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms.")

Defendants were not always able to bring compassionate release motions on their own behalf. Historically, only the BOP's Director could bring such a motion, but the BOP rarely exercised this power. "A 2013 report from the Office of the Inspector General revealed that, on average, only 24 incarcerated people per year were released on BOP motion." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quoting *Brooker*, 976 F.3d at 231). Moreover, "the program was plagued by mismanagement" and inconsistency. *Id.* at 518-19. Recognizing this problem, Congress sought to expand compassionate release by passing the First Step Act in December 2018. Section 603(b) of the First Step Act—titled "[i]ncreasing the use and transparency of compassionate release"—removed the BOP from this gatekeeper role and amended § 3582(c)(1)(A) to permit inmates to file motions for compassionate release in the district court. *Jones*, 980 F.3d at 1104-05 (citing First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194, 5239).

Before requesting a reduction, a defendant must exhaust his administrative remedies or wait thirty days from the warden's receipt of a request for release from the defendant—whichever is earlier. *Jones*, 980 F.3d at 1105. Once this preliminary step has been satisfied, the Court may grant a defendant's motion if three requirements are met: First, "the court initially must 'find[ ]' that 'extraordinary and compelling reasons warrant

such a reduction[.]' " *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Second, "the court next must 'find[ ]' 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]' " *Id.* at 1005 (quoting 18 U.S.C. § 3582(c)(1)(A)).[3] Finally, "the court may not grant the reduction before 'considering the factors set forth in section 3553(a) to the extent that they are applicable[.]' " *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

### A. Exhaustion of Administrative Remedies

The government concedes that Defendant complied with the mandatory exhaustion requirement by waiting more than 30 days past the warden's receipt of his administrative request for relief before filing the present motion. This threshold requirement to relief has therefore been satisfied.

### B. Extraordinary and Compelling Reasons

Eighteen U.S.C. § 3582 requires, but does not define, "extraordinary and compelling reasons[.]" District courts have therefore been given "full discretion" to define what constitutes "extraordinary and compelling" on a case-by-case basis. *Jones*, 980 F.3d at 1111; see also *Brooker*, 976 F.3d at 237 (noting that "a district court's discretion in this area – as in all sentencing matters – is broad"). In the context of the COVID-19 pandemic, many courts have found these reasons where a defendant suffers from a medical condition that makes him more susceptible to severe illness from COVID-19. *See, e.g., United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *1 (E.D. Tenn. Apr. 15, 2020) (granting compassionate release to an inmate diagnosed with COPD and who required oxygen therapy); *United States v. Allsbrook*, No. 1:17-CR-74-4, 2020 WL

---

[3] The policy statement referenced in step two is found in U.S.S.G. § 1B1.13 and presently only applies to motions brought by the Bureau of Prisons, not to inmate-filed motions. Elias, 984 F.3d at 519.

7202577, at *1 (S.D. Ohio Dec. 7, 2020) (granting compassionate release to a defendant who suffered from sleep apnea and asthma); *United States v. Meeks*, No. 10-CR-20388-2, 2021 WL 869669, at *1 (E.D. Mich. Mar. 9, 2021) (finding extraordinary and compelling reasons for compassionate release where defendant was obese and had been diagnosed with high blood pressure).

Numerous courts have also found extraordinary and compelling reasons where legislative changes drastically reduced mandatory sentencing requirements. *See, e.g., United States v. Young*, 458 F. Supp. 3d 838 (M.D. Tenn. 2020); *United States v. Baker*, No. 20513, 2020 WL 4696594, at *3 (E.D. Mich. Aug. 13, 2020); *United States v. Marks*, 455 F. Supp. 3d 17 (W.D.N.Y. 2020); *United States v. Taniguchi*, No. 00-50, 2020 WL 6390061, at *3-5 (S.D. Ohio Nov. 2, 2020). Some courts (mostly pre-pandemic) have also found extraordinary and compelling reasons to grant compassionate release based upon combinations of other factors including the defendant's history, mismanagement of the defendant's medical care, the health of defendant's family members, and job opportunities. *See, e.g., United States v. Walker*, No. 1:11 CR 270, 2019 WL 5268752, at *3 (N.D. Ohio Oct. 17, 2019) (granting compassionate release to a veteran who had served a significant portion of his sentence and who had an opportunity to produce a movie based upon a book he authored); *United States v. Beck*, 425 F. Supp. 3d 573 (M.D. N.C. 2019) (granting compassionate release to a defendant whose breast cancer spread after the BOP grossly mismanaged her medical care); *United States v. Bucci*, 409 F. Supp. 3d 1 (D. Mass. 2019) (granting compassionate release to a defendant who was the only potential caregiver for his ailing mother).

More recently, this Court found a sentence disparity created after sentencing through no fault of the defendant to be an extraordinary and compelling reason warranting compassionate release. *United States v. Ferguson*, --- F. Supp. 3d ----, 2021 WL 1685944, at *3, (E.D. Mich. April 29, 2021). Essentially, courts have used their discretion and their intimate knowledge of individual defendants' cases to further the purpose of the compassionate release statute – to reduce terms of incarceration based upon a consideration of a defendant's unique circumstances. *See Jones*, 980 F.3d at 1104-05 (discussing how "a bipartisan coalition in Congress sought to boost grants of compassionate release by reforming § 3582(c)(1)(A)'s procedures").

Here, Defendant claims he suffers from a myriad of health concerns that he argues raise his risk of severe illness from COVID-19 and therefore amount to extraordinary and compelling reasons that warrant a sentence reduction. The government disputes the existence and extent of many of his health concerns but concedes Defendant is overweight, pre-diabetic, and suffers from hypertension. Indeed, Defendant's medical records show he is borderline diabetic and continues to have high blood pressure despite the assurance from the government that this condition is being managed by the BOP.

"Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions." *Elias*, 984 F.3d at 521. The Centers for Disease Control ("CDC") currently advises that hypertension, diabetes, or a high BMI can make you more likely to get severely ill from COVID-19. *See People with Certain Medical Conditions,* Centers for Disease Control and Prevention (last updated May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The Court therefore finds that these health conditions in

combination with Defendant's other arguments constitute extraordinary and compelling reasons to modify his sentence.

This conclusion does not change given Defendant's previous diagnosis of COVID-19. Defendant paints a grim picture of his first bout with the disease and the Court is not satisfied that he would not suffer the same fate or worse if he were to be re-infected.[4] And FCI Elkton, where Defendant is currently being held, has been one of the least successful prisons in the fight against COVID-19. *See Jones*, 980 F.3d at 1101 n.2 (citing *Wilson v. Williams*, No. 4:20-CV-00794, 2020 WL 2542131, at *3 (N.D. Ohio May 19, 2020); *see also COVID-19 Cases*, Federal Bureau of Prisons (last updated June 7, 2021), https://www.bop.gov/coronavirus/ (showing two current cases of COVID-19 among inmates and staff at FCI Elkton, 893 recoveries, and nine inmate deaths as a result of the virus).

Defendant's vaccination status also does not work against him. If anything, his choice to receive the vaccine shows that he is genuinely concerned for his health and safety. The COVID-19 vaccine, though largely successful at preventing severe illness, is by no means 100% effective and the longevity of any immunity from either the vaccine or Defendant's previous illness is uncertain. *See Ensuring COVID-19 Vaccines Work*, Centers for Disease Control and Prevention (last updated May 10, 2021),

---

[4] Defendant indicates that he became severely ill on or about April 5, 2020. He had trouble breathing, lost all sense of taste and smell, had chills, headaches, body aches, and mental confusion. Despite these symptoms, Defendant claims he was ignored by FCI Elkton medical staff and told to send an email to the facility's health services department. Defendant sent many emails to both health services and eventually, the warden, asking and then begging for medical attention. Despite his requests and the growing number of inmates with symptoms of COVID-19, Defendant was not seen by medical personnel until weeks later when he was finally tested and received a positive result. With limited resources and the prison on lockdown, Defendant states that he and many others were forced to care and be cared for by their fellow inmates to the best of their abilities. Defendant attaches to his motion a statement from one inmate in particular who describes his attempts to care for Defendant and treat his severe respiratory symptoms by dissolving cough drops in hot water and encouraging Defendant to breathe the vapors. (*See* ECF No. 3035, PageID.22676.)

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness.html?s_cid=10464:covid%20vaccine%20effectiveness:sem.ga:p:RG:GM:gen:PTN:FY21.

Additionally, the Court finds the disparity between Defendant's sentence of 30-years and the 20-year amended sentence of his co-defendant Nagi to be an extraordinary and compelling reason to reduce Defendant's sentence under § 3582(c)(1)(A). As discussed above, Nagi and Defendant were convicted of almost identical charges with the exception of Defendant's additional drug charge and Nagi's two convictions for using a firearm during and in relation to a crime of violence and assault with a dangerous weapon in aid of racketeering. The Court compared Defendant's crimes to Nagi's at Defendant's original sentencing. Based in part upon this comparison, Defendant was sentenced to 30 years in prison – seven years less than Nagi's sentence. It was only because of a change in the law regarding the burden of proof on Nagi's firearm charge that Nagi was ultimately able to be re-sentenced to a new term of incarceration of 20 years. Requiring Defendant to now serve 10 additional years in prison, a total of 30 years, because he was *not* convicted of using a firearm during a crime of violence and therefore was not eligible for re-sentencing would be unjust. *See Ferguson*, --- F. Supp. 3d ----, 2021 WL 1685944, at *3 (finding as an extraordinary and compelling reason for a sentence modification that the defendant faced a longer term of incarceration than a more culpable co-defendant after said co-defendant was released from prison 16 years early). Indeed, if Defendant were made to serve his entire term of 30 years, he would be made to serve more time than both Nagi and the "godfather" of HMC, Moore, who was compassionately released after having served only ten years.

### C. Sentencing Factors

Although Defendant has made a satisfactory showing of extraordinary and compelling reasons that warrant a sentence modification, the Court must also consider the relevant factors listed in 18 U.S.C. § 3553(a). These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, the need to promote respect for the law and provide just punishment for the offense, general and specific deterrence, protection of the public, and the need to avoid unwarranted sentence disparities. *See* 3553(a).

Defendant's crimes were serious. He held a leadership position in an extensive criminal enterprise that involved massive amounts of drugs and an interstate theft operation, among other things. This factor works against granting his motion. But Defendant's history and characteristics, particularly in the past ten years since his incarceration, work in his favor. Since his conviction, Defendant has enrolled in and graduated from a GED program, enrolled in community college, and enrolled in and completed numerous other classes. He has demonstrated an effort to educate himself and develop skills for leading a law-abiding life upon release. He has also maintained an excellent disciplinary file and, as a result, has been transferred to a low security prison where he works in a position of trust as a groundskeeper. Defendant states he has the strong support of his family and the BOP has determined his risk of reoffending is low. Given this assessment and Defendant's advanced age and health concerns, the factors concerning deterrence and protection of the public also weigh in Defendant's favor.

But the Court is not quite convinced that the remaining factors warrant Defendant's immediate release. Rather, the Court is compelled by Defendant's arguments and the

factor regarding sentence disparities to reduce Defendant's term of incarceration to 20 years – the same sentence Nagi received upon his resentencing. This ten-year reduction in Defendant's term of incarceration reflects the extraordinary and compelling circumstances he established while respecting the sentencing factors and the differences between his health and age and Moore's, who was significantly older when compassionately released.

### III. Conclusion

The Court has considered each party's arguments in depth and finds that a modification of Defendant's sentence is warranted. For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion for a sentence reduction under § 3582(c)(1)(A) is GRANTED IN PART AND DENIED IN PART. Defendant's motion is GRANTED in that the custodial portion of Defendant's sentence is reduced to a 20-year term of incarceration. Defendant's request for immediate release is DENIED.

Defendant's original sentence remains unchanged in all other respects.

SO ORDERED.

                                        s/Nancy G. Edmunds
                                        Nancy G. Edmunds
                                        United States District Judge

Dated: June 9, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 9, 2021, by electronic and/or ordinary mail.

                                        s/Lisa Bartlett
                                        Case Manager